Paul H. Masuhara (State Bar No. 289805)
LAW OFFICE OF MARK E. MERIN
1010 F Street, Suite 300
Sacramento, California 95814
Telephone:    (916) 443-6911
Facsimile:    (916) 447-8336
E-Mail:    paul@markmerin.com

Limited Purpose Counsel for Plaintiff
DELORES MARIE SCOTT

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

SACRAMENTO DIVISION

| | |
|---|---|
| DELORES MARIE SCOTT,<br><br>        Plaintiff,<br><br>vs.<br><br>STATE OF CALIFORNIA, CALIFORNIA DEPARTMENT OF CORRECTIONS & REHABILITATION, and DOE 1 to 30,<br><br>        Defendants. | Case No. 2:25-cv-02308-DJC-SCR<br><br>**SECOND AMENDED COMPLAINT FOR VIOLATION OF CIVIL AND CONSTITUTIONAL RIGHTS**<br><br>**DEMAND FOR JURY TRIAL** |

## INTRODUCTION

LAMAR LAVALL SCOTT was killed on December 16, 2024, when he was stabbed by fellow inmate JASON BRANNIGAN at the California State Prison, Sacramento, in the custody of the STATE OF CALIFORNIA and CALIFORNIA DEPARTMENT OF CORRECTIONS & REHABILITATION.

## JURISDICTION & VENUE

1.     This Court has jurisdiction of the federal claims under 28 U.S.C. § 1331 (in that they arise under the United States Constitution) and 28 U.S.C. § 1343(a)(3) (in that the action is brought to address deprivations, under color of state authority, of rights, privileges, and immunities protected by the U.S. Constitution). This Court has supplemental jurisdiction of the state law claims under 28 U.S.C. § 1367.

2.     Venue is proper in the United State District Court for the Eastern District of California pursuant to 28 U.S.C. § 1391(b) because Defendants are located in the Eastern District of California and because many of the acts and/or omissions described herein occurred in the Eastern District of California.

1

3.      Intradistrict venue is proper in the Sacramento Division of the Eastern District of California pursuant to Local Rule 120(d) because the claims asserted herein arise from acts and/or omissions which occurred in the County of Sacramento, California.

## EXHAUSTION

4.      On August 20, 2025, DELORES MARIE SCOTT submitted a government claim to the STATE OF CALIFORNIA's Government Claims Program relating to the claims asserted in this action pursuant to California Government Code § 910 *et seq*.

5.      By October 6, 2025, the STATE OF CALIFORNIA and CALIFORNIA DEPARTMENT OF CORRECTIONS & REHABILITATION failed or refused to act on the government claim.

6.      Any defense as to the sufficiency of the government claim or the time limit for presenting the government claim was waived pursuant to California Government Code §§ 911, 911.3(b).

## PARTIES

7.      Plaintiff DELORES MARIE SCOTT is a resident of the County of Marin, California. Plaintiff DELORES MARIE SCOTT brings this action: (a) on behalf of LAMAR LAVALL SCOTT, in her representative capacity pursuant to California Code of Civil Procedure § 377.30; and (b) on behalf of herself, in her individual capacity. Plaintiff DELORES MARIE SCOTT is the biological mother of LAMAR LAVALL SCOTT and an heir to his estate under California law. Plaintiff DELORES MARIE SCOTT's declarations demonstrating status as LAMAR LAVALL SCOTT's successor-in-interest is attached, pursuant to California Code of Civil Procedure § 377.32.

8.      Defendant STATE OF CALIFORNIA is located in the State of California. Defendant STATE OF CALIFORNIA is a "public entity," pursuant to California Government Code § 811.2.

9.      Defendant CALIFORNIA DEPARTMENT OF CORRECTIONS & REHABILITATION located in the State of California. Defendant CALIFORNIA DEPARTMENT OF CORRECTIONS & REHABILITATION is a "public entity," pursuant to California Government Code § 811.2.

10.     Defendants DOE 1 to 30 are and/or were officers, employees, agents, and/or contractors of Defendants STATE OF CALIFORNIA and/or CALIFORNIA DEPARTMENT OF CORRECTIONS & REHABILITATION, acting within the scope of agency or employment and under color of state law. Defendants DOE 1 to 30 are sued by fictitious names and their true and correct names and identities will

2

be substituted when ascertained.

## GENERAL ALLEGATIONS

11.     At all times relevant herein, all wrongful acts described were performed under color of state law and/or in concert with or on behalf of those acting under the color of state law.

12.     LAMAR LAVALL SCOTT was a 35-year-old man, prior to his death on December 16, 2024.

13.     LAMAR LAVALL SCOTT was an inmate at California State Prison, Sacramento ("CSP-SAC") at the time of his death.

14.     On December 16, 2024, LAMAR LAVALL SCOTT was fatally stabbed by another inmate, JASON BRANNIGAN, inside the prison.

15.     JASON BRANNIGAN stabbed LAMAR LAVALL SCOTT multiple times with an improvised weapon.

16.     LAMAR LAVALL SCOTT called out for help prior to and during the stabbing, including yelling, "Help me!" and "I'm being stabbed."

17.     LAMAR LAVALL SCOTT's stabbing was witnessed and his calls for help were heard by correctional officers, including Defendants DOE 21 to 30, who had the opportunity to prevent or intervene in JASON BRANNIGAN's attack but failed to do so.

18.     After LAMAR LAVALL SCOTT was stabbed, JASON BRANNIGAN stabbed a second inmate, SANTANA WEST.

19.     The correctional officers, including Defendants DOE 21 to 30, intervened during SANTANA WEST's stabbing.

20.     SANTANA WEST survived JASON BRANNIGAN's attack.

21.     Plaintiff DELORES MARIE SCOTT lacks access to critical information related to the LAMAR LAVALL SCOTT's death, including the details of JASON BRANNIGAN's attack, and the identities and actions of the involved prison officials, including Defendants DOE 1 to 30, because the Defendants STATE OF CALIFORNIA and CALIFORNIA DEPARTMENT OF CORRECTIONS & REHABILITATION have failed to release information beyond that which was described in a press release. *California State Prison, Sacramento Officials Investigating Death of Incarcerated Person as*

3

*Homicide* (Dec. 17, 2020), available at: <https://www.cdcr.ca.gov/news/2024/12/17/california-state-prison-sacramento-officials-investigating-death-of-incarcerated-person-as-homicide/>.

**Housing**

22.    Defendants DOE 1 to 10 (prison officials) were responsible for assigning, classifying, and housing inmates at CSP-SAC.

23.    Defendants DOE 1 to 10 failed adequately to assign, classify, and house inmates, including JASON BRANNIGAN, relative to the danger and threat they presented to other inmates, including LAMAR LAVALL SCOTT, within CSP-SAC.

24.    Defendants DOE 1 to 10 knew of JASON BRANNIGAN's documented history of violence.

(a)    JASON BRANNIGAN was sentenced to 17 years, eight months for corporal injury to spouse within seven years of a prior/specified conviction, criminal threat to cause great bodily injury/death and vandalism as a second striker, with an enhancement for a prior felony conviction of a serious offense.

(b)    While incarcerated, JASON BRANNIGAN was sentenced to four years for possession/manufacture of a deadly weapon as a second striker, an in-prison offense.

25.    Defendants DOE 11 to 20 knew that the manner in which they inadequately assigned, classified, and housed inmates would permit inmates access to contraband weapons and to assault other inmates who were inadequately monitored, observed, and supervised.

26.    Defendants DOE 1 to 10 exhibited deliberate indifference to LAMAR LAVALL SCOTT's safety and security.

(a)    <u>Intentional Decision</u>: Defendants DOE 1 to 10 made an intentional decision with respect to the conditions under which CSP-SAC inmates, including LAMAR LAVALL SCOTT and JASON BRANNIGAN, were confined. Defendants DOE 1 to 10 chose the practices of inadequately assigning, classifying, and housing JASON BRANNIGAN in a manner which gave him access to contraband and other inmates, including LAMAR LAVALL SCOTT, and those practices did not occur involuntarily or by accident.

(b)    <u>Risk of Harm</u>: Defendants DOE 1 to 10's decision with respect to the conditions

4

under which CSP-SAC inmates, including LAMAR LAVALL SCOTT and JASON BRANNIGAN, were confined put LAMAR LAVALL SCOTT at substantial risk of suffering serious harm. JASON BRANNIGAN was confined with and had access to contraband and LAMAR LAVALL SCOTT, where JASON BRANNIGAN was a violent inmate with a history of violence and contraband weapons.

(c)    Subjectively Unreasonable: Defendants DOE 1 to 10 did not take reasonable available measures to abate the serious risk of harm to LAMAR LAVALL SCOTT, where Defendants DOE 1 to 10 knew of and disregarded an excessive risk to LAMAR LAVALL SCOTT's health or safety. Defendants DOE 1 to 10 could and should have taken reasonable measures to mitigate the substantial risk, including:

(i)    assigning JASON BRANNIGAN in a manner which prevented his access to contraband weapons and LAMAR LAVALL SCOTT;

(ii)    classifying JASON BRANNIGAN in a manner which prevented his access to contraband weapons and LAMAR LAVALL SCOTT; and

(iii)    housing JASON BRANNIGAN in a manner which prevented his access to contraband weapons and LAMAR LAVALL SCOTT.

(d)    Causation: Defendants DOE 1 to 10 caused LAMAR LAVALL SCOTT's injuries and death by not taking reasonable available measures to abate the serious risk of harm to LAMAR LAVALL SCOTT. Defendants DOE 1 to 10's actions and inactions caused JASON BRANNIGAN's deadly assault on LAMAR LAVALL SCOTT.

27.    Defendants DOE 1 to 10's actions and inactions failed to utilize appropriate policies, training, standards, and procedures, including in violation of the California Commission on Peace Officer Standards and Training ("POST") Learning Domain 31 (Custody), Learning Domain 62 (Case Management and Sources of Information); and California Department of Corrections & Rehabilitation Department Operations Manual ("DOM") Chapter 6 (Adult Classification).

**Contraband**

28.    Defendants DOE 11 to 20 (prison officials) were responsible for searching for, monitoring, detecting, confiscating, and preventing the introduction and manufacture of deadly contraband weapons within CSP-SAC.

29.    Defendants DOE 11 to 20 failed adequately to search for, monitor, detect, confiscate, and prevent the introduction and manufacture of deadly contraband weapons within CSP-SAC, including the improvised weapon JASON BRANNIGAN used to stab LAMAR LAVALL SCOTT.

30.    Defendants DOE 11 to 20 knew that Defendants STATE OF CALIFORNIA and CALIFORNIA DEPARTMENT OF CORRECTIONS & REHABILITATION's prison facilities, including CSP-SAC, were overrun with contraband, including improvised weapons, which were readily available to violent inmates, including JASON BRANNIGAN.

31.    Defendants DOE 11 to 20 knew that the manner in which they inadequately searched for, monitored, detected, confiscated, and prevented the introduction and manufacture of deadly contraband weapons would permit inmates who were inadequately assigned, classified, and housed to access contraband weapons and to assault other inmates who were inadequately monitored, observed, and supervised.

32.    Defendants DOE 11 to 20 exhibited deliberate indifference to LAMAR LAVALL SCOTT's safety and security.

(a)    <u>Intentional Decision</u>: Defendants DOE 11 to 20 made an intentional decision with respect to the conditions under which CSP-SAC inmates, including LAMAR LAVALL SCOTT and JASON BRANNIGAN, were confined. Defendants DOE 11 to 20 chose the practices of inadequately searching for, monitoring, detecting, confiscating, and preventing the introduction and manufacture of deadly contraband weapons which gave JASON BRANNIGAN access to contraband, and those practices did not occur involuntarily or by accident.

(b)    <u>Risk of Harm</u>: Defendants DOE 11 to 20's decision with respect to the conditions under which CSP-SAC inmates, including LAMAR LAVALL SCOTT and JASON BRANNIGAN, were confined put LAMAR LAVALL SCOTT at substantial risk of suffering serious harm. JASON BRANNIGAN was confined with and had access to contraband and LAMAR LAVALL SCOTT, where JASON BRANNIGAN was a violent inmate with a history of violence and contraband weapons.

(c)    <u>Subjectively Unreasonable</u>: Defendants DOE 11 to 20 did not take reasonable available measures to abate the serious risk of harm to LAMAR LAVALL SCOTT, where Defendants DOE 11 to 20 knew of and disregarded an excessive risk to LAMAR LAVALL SCOTT's health or

safety. Defendants DOE 11 to 20 could and should have taken reasonable measures to mitigate the substantial risk, including:

(i)    searching for deadly contraband weapons in JASON BRANNIGAN's possession;

(ii)    monitoring deadly contraband weapons in JASON BRANNIGAN's possession;

(iii)    detecting contraband weapons in JASON BRANNIGAN's possession;

(iv)    confiscating deadly contraband weapons in JASON BRANNIGAN's possession; and

(v)    preventing the introduction and manufacture of deadly contraband weapons in CSP-SAC, including those in JASON BRANNIGAN's possession.

(d)    Causation: Defendants DOE 11 to 20 caused LAMAR LAVALL SCOTT's injuries and death by not taking reasonable available measures to abate the serious risk of harm to LAMAR LAVALL SCOTT. Defendants DOE 11 to 20's actions and inactions caused JASON BRANNIGAN's deadly assault on LAMAR LAVALL SCOTT.

33.    Defendants DOE 11 to 20's actions and inactions failed to utilize appropriate policies, training, standards, and procedures, including in violation of the California Commission on Peace Officer Standards and Training ("POST") Learning Domain 31 (Custody), Learning Domain 62 (Case Management and Sources of Information); and California Department of Corrections & Rehabilitation Department Operations Manual ("DOM") Chapter 5 (Adult Custody and Security Operations).

**Monitoring**

34.    Defendants DOE 21 to 30 (prison officials) were responsible for monitoring, observing, and supervising inmates, including JASON BRANNIGAN and LAMAR LAVALL SCOTT.

35.    Defendants DOE 21 to 30 failed to detect, intervene, and prevent JASON BRANNIGAN's assault and adequately to protect LAMAR LAVALL SCOTT from JASON BRANNIGAN, where Defendants DOE 21 to 30 observed escalating tensions and were aware of JASON BRANNIGAN's history of violence.

36.    Defendants DOE 21 to 30 failed timely to summon medical care for LAMAR LAVALL

7

1    SCOTT, after JASON BRANNIGAN stabbed LAMAR LAVALL SCOTT multiple times.

2        37.    Defendants DOE 21 to 30 knew that the manner in which they inadequately monitored,

3    observed, and supervised inmates would permit inmates who were inadequately assigned, classified, and

4    housed to access contraband weapons and to assault other inmates.

5        38.    Defendants DOE 21 to 30 exhibited deliberate indifference to LAMAR LAVALL

6    SCOTT's safety and security.

7            (a)    Intentional Decision: Defendants DOE 21 to 30 made an intentional decision with

8    respect to the conditions under which CSP-SAC inmates, including LAMAR LAVALL SCOTT and

9    JASON BRANNIGAN, were confined. Defendants DOE 21 to 30 chose the practices of inadequately

10    monitoring, observing, and supervising inmates, including JASON BRANNIGAN and LAMAR

11    LAVALL SCOTT, and those practices did not occur involuntarily or by accident.

12            (b)    Risk of Harm: Defendants DOE 21 to 30's decision with respect to the conditions

13    under which CSP-SAC inmates, including LAMAR LAVALL SCOTT and JASON BRANNIGAN, were

14    confined put LAMAR LAVALL SCOTT at substantial risk of suffering serious harm. JASON

15    BRANNIGAN was confined with and had access to contraband and LAMAR LAVALL SCOTT without

16    adequate supervision, where JASON BRANNIGAN was a violent inmate with a history of violence and

17    contraband weapons.

18            (c)    Subjectively Unreasonable: Defendants DOE 21 to 30 did not take reasonable

19    available measures to abate the serious risk of harm to LAMAR LAVALL SCOTT, where Defendants

20    DOE 21 to 30 knew of and disregarded an excessive risk to LAMAR LAVALL SCOTT's health or

21    safety. Defendants DOE 21 to 30 could and should have taken reasonable measures to mitigate the

22    substantial risk, including:

23                (i)    conducting security checks of inmates and areas sufficient to observe and

24    respond to safety risks and suspicious activity;

25                (ii)    monitoring inmates and areas sufficient to observe and respond to safety

26    risks and suspicious activity;

27                (iii)    observing and responding to safety risks and suspicious activity once

28    detected;

8

1    (iv)    intervening when alerted to the presence of safety risks;

2    (v)    providing medical care to injured inmates, when serious medical needs are

3 discovered; and

4    (vi)    summoning medical care, when serious medical needs are discovered.

5    (d)    Causation: Defendants DOE 21 to 30 caused LAMAR LAVALL SCOTT's

6 injuries and death by not taking reasonable available measures to abate the serious risk of harm to

7 LAMAR LAVALL SCOTT. Defendants DOE 21 to 30's actions and inactions caused JASON

8 BRANNIGAN's deadly assault on LAMAR LAVALL SCOTT, and the untimely medical response to

9 LAMAR LAVALL SCOTT after he had been stabbed.

10    39.    Defendants DOE 21 to 30's actions and inactions failed to utilize appropriate policies,

11 training, standards, and procedures, including in violation of the California Commission on Peace Officer

12 Standards and Training ("POST") Learning Domain 31 (Custody), Learning Domain 62 (Case

13 Management and Sources of Information); and California Department of Corrections & Rehabilitation

14 Department Operations Manual ("DOM") Chapter 5 (Adult Custody and Security Operations), Chapter 9

15 (Health Care Services).

16    **POLICY / CUSTOM ALLEGATIONS**

17    40.    Defendants DOE 1 to 30 knew that Defendants STATE OF CALIFORNIA and

18 CALIFORNIA DEPARTMENT OF CORRECTIONS & REHABILITATION maintained inadequate

19 policies and customs relating to the assignment, classification, and housing assignment of inmates at

20 CSP-SAC; relating to searching for, monitoring, detecting, confiscating, and preventing the introduction

21 and manufacture of deadly contraband weapons into CSP-SAC; and relating to monitoring, observing,

22 and supervising inmates at CSP-SAC, including based on frequent and ongoing incidents where violent

23 inmates had access to other inmates, were permitted to access contraband weapons, and had the ability to

24 assault other inmates without detection.

25    (a)    On July 18, 2025, inmate Anthony Francis Jr. was killed by his cellmate in CSP-

26 SAC. *California State Prison, Sacramento Officials Investigating the Death of an Incarcerated Person

27 as a Homicide* (Sep. 17, 2025), available at: <https://www.cdcr.ca.gov/news/2025/09/17/california-state-

28 prison-sacramento-officials-investigating-the-death-of-an-incarcerated-person-as-a-homicide-6/>.

9

(b)      On March 7, 2025, inmate Jake Kennedy was stabbed to death by his cellmate with a contraband "improvised weapons" at CSP-SAC. The attacker was known by prison staff to be violent, where he had stabbed-to-death another inmate, Jonathan Rude, with a contraband weapon, less than one month earlier on February 24, 2025. *California State Prison, Sacramento Officials Investigating Death of an Incarcerated Person as a Homicide* (Mar. 7, 2025), available at: <https://www.cdcr.ca.gov/news/2025/03/07/california-state-prison-sacramento-officials-investigating-death-of-an-incarcerated-person-as-a-homicide/>.

(c)      On February 24, 2025, inmate Jonathan Rude was stabbed to death by two inmates who were both wielding contraband "improvised weapons" at CSP-SAC. The attackers had a history of violence and weapons, including while in-custody. *California State Prison, Sacramento Investigating Death of Incarcerated Person as Homicide* (Feb. 24, 2025), available at: <https://www.cdcr.ca.gov/news/2025/02/24/california-state-prison-sacramento-investigating-death-of-incarcerated-person-as-homicide/>.

(d)      On January 16, 2025, inmate Mario Campbell was stabbed to death by two inmates using three different contraband "improvised weapons" at CSP-SAC. The attackers had a history of murder, violence, and weapons, including while in-custody. *California State Prison, Sacramento Officials Investigating the Death of an Incarcerated Person as a Homicide* (Jan. 16, 2025), available at: <https://www.cdcr.ca.gov/news/2025/01/16/california-state-prison-sacramento-officials-investigating-the-death-of-an-incarcerated-person-as-a-homicide-5/>.

(e)      On November 22, 2024, an inmate drew a contraband "improvised weapon against two officers" at CSP-SAC. *Attempted Homicide of California State Prison, Sacramento Officers Under Investigation* (Nov. 26, 2025), available at: <https://www.cdcr.ca.gov/news/2024/11/26/attempted-homicide-of-california-state-prison-sacramento-officers-under-investigation/>.

(f)      On October 12, 2024, inmate Kyle Cooper was beaten to death by his cellmate in CSP-SAC. The attacker had a history of murder, violence, and weapons, including while in-custody. *California State Prison, Sacramento Officials Investigating the Death of an Incarcerated Person as a Homicide* (Oct. 12, 2024), available at: <https://www.cdcr.ca.gov/news/2024/10/12/california-state-prison-sacramento-officials-investigating-the-death-of-an-incarcerated-person-as-a-homicide-4/>.

(g)      On August 23, 2024, inmate Darryl Hudson was beaten to death by an inmate at CSP-SAC. *California State Prison, Sacramento Officials Investigating the Death of an Incarcerated Person as a Homicide* (Aug. 24, 2024), available at:

<https://www.cdcr.ca.gov/news/2024/08/24/california-state-prison-sacramento-officials-investigating-the-death-of-an-incarcerated-person-as-a-homicide-3/>.

(h)      On July 14, 2024, inmate Randy Schlaepfer was stabbed to death by three inmates using two contraband "improvised weapons" at CSP-SAC. The attackers had a history of murder, violence, and weapons, including while in-custody. *California State Prison, Sacramento Officials Investigating the Death of an Incarcerated Person as a Homicide* (July 16, 2024), available at:

<https://www.cdcr.ca.gov/news/2024/07/16/california-state-prison-sacramento-officials-investigating-the-death-of-an-incarcerated-person-as-a-homicide-2/>.

(i)      On July 6, 2023, inmate Michael Torres was stabbed to death by two inmates using contraband weapons at CSP-SAC. The attackers had a history of murder, violence, and weapons, including while in-custody. *California State Prison Sacramento Officials Investigating the Death of an Incarcerated Person as a Homicide* (July 6, 2023), available at:

<https://www.cdcr.ca.gov/news/2023/07/06/california-state-prison-sacramento-officials-investigating-the-death-of-an-incarcerated-person-as-a-homicide/>.

(j)      On May 1, 2023, inmate Edward Bergman was stabbed to death by his cellmate using a contraband weapon at CSP-SAC. The attacker had a history of murder. *SAC Investigating Homicide of Incarcerated Person* (May 1, 2023), available at:

<https://www.cdcr.ca.gov/news/2023/05/01/california-state-prison-sacramento-investigating-homicide-of-incarcerated-person-3/>.

(k)      On January 21, 2023, inmate Joseph Horne was beaten to death by his cellmate in CSP-SAC. The attacker had a history of violence, including while in-custody. *SAC Investigating Homicide of Incarcerated Person* (Jan. 21, 2023), available at:

<https://www.cdcr.ca.gov/news/2023/01/21/california-state-prison-sacramento-investigating-homicide-of-incarcerated-person-2/>.

(l)      On October 4, 2022, inmate Felipe Rodriguez was stabbed to death by two inmates

11

using two contraband "inmate-made" weapons at CSP-SAC. The attackers had a history of murder,
violence, and weapons. *SAC Investigating Homicide of Incarcerated Person* (Oct. 4, 2022), available at:
<https://www.cdcr.ca.gov/news/2022/10/04/california-state-prison-sacramento-investigating-homicide-
of-incarcerated-person/>.

(m)     On July 23, 2022, inmate Wayne Caskey was stabbed to death by two inmates
using contraband "manufactured" weapons at CSP-SAC. The attackers had a history of murder, violence,
and weapons, including while in-custody. *CDCR Investigates Deaths of Incarcerated Persons* (July 25,
2022), available at: <https://www.cdcr.ca.gov/news/2022/07/25/cdcr-officials-investigating-the-deaths-
of-two-incarcerated-persons-as-homicides/>.

(n)     On May 6, 2022, inmate Camilo Banoslopez was beaten and stabbed to death by
four inmates using two contraband "inmate-manufactured weapons" at CSP-SAC. The attackers had a
history of murder, violence, and weapons, including while in-custody. *SAC Investigates Death of
Incarcerated Person as Homicide* (May 7, 2022), available at:
<https://www.cdcr.ca.gov/news/2022/05/07/officials-at-california-state-prison-sacramento-
investigatingthe-death-of-an-incarcerated-person-as-a-homicide/>.

(o)     On March 26, 2022, inmate Nathan Marcus was killed by two inmates at CSP-
SAC. The attackers had a history of violence. *SAC Investigating Death of Incarcerated Person as a
Homicide* (Mar. 27, 2022), available at: <https://www.cdcr.ca.gov/news/2022/03/27/sac-homicide/>.

(p)     On January 8, 2022, inmate Deandre Lewis was killed by his cellmate at CSP-
SAC. The attacker had a history of murder and violence. *SAC investigating death of incarcerated person
as a homicide* (Jan. 10, 2022), available at: < https://www.cdcr.ca.gov/news/2022/01/10/sac-homicide-
2/>.

(q)     On August 29 or 31, 2021, inmate Jerome Mitchell was beaten and stabbed by two
inmates, including being stabbed in the hand and forehead, at CSP-SAC. The tower guard who observed
the attack did not intervene and Mitchell was forced to run across the compound while bleeding
profusely in order to escape the assault. After the attack, on January 8, 2022, Mitchell's cellmate was
killed by another inmate. A civil rights lawsuit was filed. *Mitchell v. Desimone*, No. 2:22-cv-00278-TLN-
DMC (E.D. Cal.).

1          (r)     On December 25, 2020, inmate Braydon Lesseos was stabbed to death by his

2  cellmate who used an "inmate manufactured weapon" at CSP-SAC. *California State Prison, Sacramento*

3  *Investigating Inmate Death as a Homicide* (Dec. 28, 2020), available at:

4  <https://www.cdcr.ca.gov/news/2020/12/28/california-state-prison-sacramento-investigating-inmate-

5  death-as-a-homicide-8/>.

6          (s)     On November 25, 2020, inmate Paul Solis was stabbed by three inmates with

7  contraband "weapons they had made" at CSP-SAC. The attackers had a history of murder, violence, and

8  weapons, including while in-custody. *CDCR Investigating Deadly Force Incident at California State*

9  *Prison-Sacramento* (Nov. 25, 2020), available at: <https://www.cdcr.ca.gov/news/2020/11/25/cdcr-

10  investigating-deadly-force-incident-at-california-state-prison-sacramento-2/>.

11         (t)     On July 13, 2020, an inmate stabbed two correctional officers with a contraband

12  "inmate-manufactured weapon" at CSP-SAC. The attacker had a history of murder and violence.

13  *California State Prison, Sacramento Investigating Attempted Homicide of a Peace Officer* (July 13,

14  2020), available at: <https://www.cdcr.ca.gov/news/2020/07/13/california-state-prison-sacramento-

15  investigating-attempted-homicide-of-a-peace-officer-2/>.

16         (u)     On June 30, 2020, inmate Jason Leonard was stabbed by another inmate with a

17  contraband weapon as he walked by a broken cell window at CSP-SAC. Weeks earlier, another inmate

18  had been stabbed to death in the same manner. A civil rights lawsuit was filed. *Leonard v. Britton*, No.

19  2:22-cv-01231-WBS-SCR (E.D. Cal.). The case remains pending.

20         (v)     On March 26, 2020, inmate Antoine Bailey was stabbed by another inmate with a

21  contraband weapon at CSP-SAC. The attacker had been verbally antagonizing Bailey for several minutes

22  in front of multiple correctional officers, before the officers asked to speak with the attacker. After

23  conversing with the attacker, the officers permitted the attacker to approach and stab Bailey. A civil

24  rights lawsuit was filed. *Bailey v. Clawson*, No. 2:22-cv-01670-WBS-SCR (E.D. Cal.). The case was

25  settled pre-trial.

26         (w)    On December 12, 2019, inmate Luis Aguilar was stabbed to death by two inmates

27  using a contraband "inmate-manufactured weapon[]" at CSP-SAC. The attackers had a history of murder,

28  violence, and weapons, including while in-custody. *California State Prison, Sacramento Investigating*

13

*Inmate Death as a Homicide* (Dec. 12, 2019), available at:

<https://www.cdcr.ca.gov/news/2019/12/12/9091/>.

(x)     On November 25, 2019, an inmate was stabbed to death by two inmates with two contraband "inmate-manufactured weapons" at CSP-SAC. The attackers had a history of violence and weapons, including while in-custody. *California State Prison, Sacramento Investigating Inmate Death as a Homicide* (Nov. 25, 2019), available at: <https://www.cdcr.ca.gov/news/2019/11/25/9063/>.

(y)     On October 30, 2019, an inmate was stabbed by two inmates with contraband weapons at CSP-SAC. The attackers had a history of violence and contraband, including while in-custody. *CDCR Investigating Deadly Force Incident at SAC* (Oct. 30, 2019), available at: <https://www.cdcr.ca.gov/news/2019/10/30/cdcr-investigating-deadly-force-incident-at-california-state-prison-sacramento/>.

(z)     On September 5, 2019, inmate Tou Thao was killed by his cellmate in CSP-SAC. *SAC investigating death of incarcerated person as homicide* (Sep. 6, 2019), available at: <https://www.cdcr.ca.gov/news/2019/09/06/california-state-prison-sacramento-investigating-inmate-death-as-a-homicide-7/>.

(aa)     On May 30, 2019, an inmate was stabbed to death by two inmates with a contraband "inmate-manufactured device" at CSP-SAC. The attackers had a history of murder, violence, and weapons. *California State Prison, Sacramento Investigating Inmate Death as Homicide* (May 30, 2019), available at: <https://www.cdcr.ca.gov/news/2019/05/30/california-state-prison-sacramento-investigating-inmate-death-as-homicide/>.

(bb)     On August 6, 2019, inmate Pablo Hernandez was stabbed by another inmate with a contraband weapon at CSP-SAC. The officers failed to search the attacker for weapons and did not supervise inmates under their watch. The attacker stabbed Hernandez with a four-inch blade in the neck and cut him on his abdomen. After the stabbing, Hernandez yelled help for "at least six to seven minutes" before officers responded. A civil rights lawsuit was filed. *Hernandez v. Cal. Dep't of Corr.*, No. 2:20-cv-00739-KJM-DB (E.D. Cal.).

(cc)     On November 2, 2018, inmate Fernando Samaniego was beaten and stabbed by five inmates with contraband weapons at CSP-SAC. The prison officials were aware of the risk to

14

Samaniego and the threat presented by the attackers but allowed the stabbing to occur. A civil rights lawsuit was filed. *Samaniego v. Cal. Dep't Corr. & Rehab.*, No. 2:19-cv-02606-TLN-KJN (E.D. Cal.). The case was settled pre-trial.

(dd)    On August 31, 2018, inmate Eric Rodriguez was stabbed "several times" by an inmate with a contraband "inmate-manufactured weapon" at CSP-SAC. A correctional officer shot and killed Rodriguez. *California State Prison, Sacramento Investigating Death* (Aug. 31, 2018), available at: <https://www.cdcr.ca.gov/news/2018/08/31/california-state-prison-sacramento-investigating-inmate-death/>.

(ee)    On August 23, 2018, inmate Thomas Putney was killed by his cellmate. *SAC Investigating Inmate Death as a Homicide* (Aug. 23, 2018), available at: <https://www.cdcr.ca.gov/news/2018/08/23/california-state-prison-sacramento-investigating-inmate-death-as-a-homicide-6/>.

(ff)    On July 21, 2018, inmate Sergio Castaneda III was killed by his cellmate. The attacker had a history of murder, violence, and contraband, including while in-custody. *California State Prison, Sacramento Investigating Inmate Death as a Homicide* (July 31, 2018), available at: <https://www.cdcr.ca.gov/news/2018/07/31/california-state-prison-sacramento-investigating-inmate-death-as-a-homicide-5/>.

(gg)    On April 30, 2018, inmate John Fratus was stabbed and cut by two inmates with contraband weapons at CSP-SAC, while a control tower guard failed to detect the attack. A civil rights lawsuit was filed. *Fratus v. Uchi*, No. 1:21-cv-01523-JLT-EPG (E.D. Cal.). The case was settled pre-trial.

(hh)    On April 29, 2018, inmate Anthony Junkin was killed by his cellmate. The attacker had a history of murder, violence, and weapons, including while in-custody. *California State Prison, Sacramento Investigating Inmate Death as a Homicide* (Apr. 30, 2018), available at: <https://www.cdcr.ca.gov/news/2018/04/30/california-state-prison-sacramento-investigating-inmate-death-as-a-homicide-4/>.

(ii)    On February 12, 2018, inmate Juan Victoria was killed by his cellmate. The attacker had a history of murder, violence, and weapons. California State Prison, Sacramento

15

**SECOND AMENDED COMPLAINT; DEMAND FOR JURY TRIAL**
*Scott v. State of California*, United States District Court, Eastern District of California, Case No. 2:25-cv-02308-DJC-SCR

Investigating Inmate Death as a Homicide (Feb. 13, 2018), available at:

<https://www.cdcr.ca.gov/news/2018/02/13/california-state-prison-sacramento-investigating-inmate-death-as-a-homicide-3/>.

(jj)     On January 10, 2018, inmate Devlin Stringfellow was stabbed to death by two inmates with two contraband "inmate-manufactured weapons" at CSP-SAC. The attackers had a history of contraband weapons, including while in-custody. *California State Prison, Sacramento Investigating Inmate Death as Homicide* (Jan. 11, 2018), available at:

<https://www.cdcr.ca.gov/news/2018/01/11/california-state-prison-sacramento-investigating-inmate-death-as-a-homicide-2/>.

(kk)     On October 27, 2017, an inmate was stabbed by two inmates with contraband "inmate-manufactured" and "stabbing weapons" at CSP-SAC. The attackers had a history of murder, violence, and weapons, including while in-custody. *California State Prison-Sacramento Investigating Deadly Force Incident* (Oct. 21, 2017), available at:

<https://www.cdcr.ca.gov/news/2017/10/21/california-state-prison-sacramento-investigating-deadly-force-incident/>.

(ll)     On August 30, 2017, inmate Anthony Oliva was stabbed to death by two inmates with contraband "stabbing" weapons at CSP-SAC. The attackers had a history of murder and violence. *California State Prison, Sacramento Investigating Inmate Death as a Homicide* (Aug. 30, 2017), available at: <https://www.cdcr.ca.gov/news/2017/08/30/california-state-prison-sacramento-investigating-inmate-death-as-a-homicide/>.

(mm)    On September 9, 2016, inmate Cleophus Bealey was killed by his cellmate in CSP-SAC. The attacked had a history of murder and violence. *Inmate Death at California State Prison-Sacramento Being Investigated as Possible Homicide* (Sep. 14, 2016), available at: <https://www.cdcr.ca.gov/news/2016/09/14/inmate-death-at-california-state-prison-sacramento-being-investigated-as-possible-homicide/>.

(nn)    On July 7, 2016, inmate Humberto Torres was stabbed to death by two inmates with contraband weapons at CSP-SAC. The attackers had a history of murder and violence. *Inmate Death at California State Prison-Sacramento Being Investigated as a Homicide* (July 7, 2016), available at:

16

1   <https://www.cdcr.ca.gov/news/2016/07/07/inmate-death-at-california-state-prison-sacramento-being-

2   investigated-as-a-homicide/>.

3             (oo)    On May 17, 2016, an inmate stabbed a correctional officer with a contraband

4   "inmate-manufactured weapon" at CSP-SAC. *Inmate Attacks Four Officers at California State*

5   *Prison-Sacramento* (May 17, 2016), available at: <https://www.cdcr.ca.gov/news/2016/05/17/inmate-

6   attacks-four-officers-at-california-state-prison-sacramento/>.

7             (pp)    On May 16, 2016, an inmate was stabbed by three inmates with three contraband

8   "inmate-made stabbing weapons" at CSP-SAC. *Incident at California State Prison-Sacramento Under*

9   *Investigation* (May 16, 2016), available at: <https://www.cdcr.ca.gov/news/2016/05/16/incident-at-

10  california-state-prison-sacramento-under-investigation/>.

11            (qq)    On April 21, 2016, an inmate was found to be in possession of an "inmate-

12  manufactured stabbing weapon" at CSP-SAC. The inmate had a history of violence and contraband

13  weapons, including while in-custody. *Inmate attacks officer at California State Prison-Sacramento* (Apr.

14  22, 2016), available at: <https://www.cdcr.ca.gov/news/2016/04/22/inmate-attacks-officer-at-california-

15  state-prison-sacramento/>.

16            (rr)    On February 15, 2016, inmate Darryl Staples was killed by his cellmate in CSP-

17  SAC. The attacker had a history of violence and contraband weapons, including while in-custody.

18  *California State Prison-Sacramento Inmate Death Being Investigated as a Homicide-Update* (Feb. 17,

19  2016), available at: <https://www.cdcr.ca.gov/news/2016/02/17/california-state-prison-sacramento-

20  inmate-death-being-investigated-as-a-homicide-update/>.

21            (ss)    On October 12, 2015, inmate Monte Haney was beaten and stabbed by about 21

22  inmates with contraband weapons at CSP-SAC. Prior to the attack, Haney was accused of stealing cell

23  phones from another inmate, and a correctional officer said to Haney, "My partner told me it was going

24  down today." A civil rights lawsuit was filed. *Haney v. Johnson*, No. 2:16-cv-01173-TLN-KJN (E.D.

25  Cal.). The case was settled pre-trial.

26            (tt)    Ob February 3, 2015, inmate Roberto Baldizon was stabbed to death by his

27  cellmate with a contraband weapon at CSP-SAC. Other inmates attempted to notify correctional officers

28  of the stabbing and obtain assistance for Baldizon but officers failed to respond for a significant period of

1   time. A civil rights lawsuit was filed. *Baldizon v. Macomber*, No. 2:17-cv-00228-WBS-AC (E.D. Cal.).

2           (uu)    On November 11, 2013, inmate Eric Anderson was beaten and stabbed about 15

3   times by two inmates with contraband weapons at CSP-SAC. The officer in the watch tower failed to

4   intervene and prevent the ongoing attack. Anderson attempted to flee from the attackers, as they

5   continued to stab and assault him. Eventually, officer in the tower ordered Anderson and the attackers to

6   get on the ground. After complying with the officer's order, the officer shot Anderson in the back with a

7   sponge round fired from a 40 mm block gun. A civil rights lawsuit was filed. *Anderson v. Meier*, No.

8   2:15-cv-01148-KJM-JDP (E.D. Cal.). The case was settled pre-trial.

9           (vv)    On December 1, 2010, inmate Charles Jones Jr. was stabbed and cut by two

10  inmates with contraband weapons, including a knife and razor, at CSP-SAC. The attack occurred after a

11  similar incident on September 7, 2010, where a group of inmates attempted to kill another inmate by

12  stabbing him multiple times with contraband weapons at CSP-SAC. A civil rights lawsuit was filed.

13  *Jones v. Virga*, No. 2:11-cv-03000-KJN (E.D. Cal.). The case was settled pre-trial.

14          41.    Defendants DOE 1 to 30 knew that Defendants STATE OF CALIFORNIA and

15  CALIFORNIA DEPARTMENT OF CORRECTIONS & REHABILITATION did not meaningfully

16  discipline, re-train, correct, or otherwise penalize prison officials involved in incidents where preventable

17  injuries or deaths were sustained by inmates, including related to those incidents described above.

18  Defendants STATE OF CALIFORNIA and CALIFORNIA DEPARTMENT OF CORRECTIONS &

19  REHABILITATION's routine failure to hold prison officials accountable created, facilitated, and

20  encouraged an environment where prison officials, including Defendants DOE 1 to 30, believe they can

21  operate inadequately without consequence and "get away with anything."

22                              **FIRST CLAIM**

23                         **Deliberate Indifference**

24              **(U.S. Const. Amend. VIII; 42 U.S.C. § 1983)**

25          42.    Plaintiff DELORES MARIE SCOTT (pursuant to California Code of Civil Procedure §

26  377.30) asserts this Claim against Defendants DOE 1 to 30.

27          43.    Plaintiff DELORES MARIE SCOTT realleges and incorporates the allegations of the

28  preceding paragraphs 1 to 41, to the extent relevant and as if fully set forth in this Claim.

18

**SECOND AMENDED COMPLAINT; DEMAND FOR JURY TRIAL**
*Scott v. State of California*, United States District Court, Eastern District of California, Case No. 2:25-cv-02308-DJC-SCR

44.    *Individual Liability*: Defendants DOE 1 to 30 exhibited deliberate indifference to LAMAR LAVALL SCOTT's safety and security, including by inadequately classifying, housing, eradicating contraband, supervising, and monitoring LAMAR LAVALL SCOTT and his cellmates, in violation of the Eighth Amendment to the United States Constitution.

45.    Defendants DOE 1 to 30's actions and inactions were motivated by evil motive or intent, involved reckless or callous indifference to constitutional rights, or were wantonly or oppressively done.

46.    LAMAR LAVALL SCOTT was injured as a direct and proximate result of Defendants DOE 1 to 30's actions and inactions, entitling Plaintiff DELORES MARIE SCOTT to receive compensatory (survival) and nominal damages against Defendants DOE 1 to 30; and punitive damages against Defendants DOE 1 to 30.

WHEREFORE, Plaintiff DELORES MARIE SCOTT prays for relief as hereunder appears.

**SECOND CLAIM**

**Unwarranted Interference with Familial Association**

**(U.S. Const. Amend. XIV; 42 U.S.C. § 1983)**

47.    Plaintiff DELORES MARIE SCOTT asserts this Claim against Defendants DOE 1 to 30.

48.    Plaintiff DELORES MARIE SCOTT realleges and incorporates the allegations of the preceding paragraphs 1 to 41, to the extent relevant and as if fully set forth in this Claim.

49.    Plaintiff DELORES MARIE SCOTT shared a close relationship and special bond with LAMAR LAVALL SCOTT, her biological child, which included deep attachments, commitments, and distinctively personal aspects of their lives and was typical of a close familial relationship. Plaintiff DELORES MARIE SCOTT frequently visited or spoke with LAMAR LAVALL SCOTT.

50.    *Individual Liability*: Defendants DOE 1 to 30 caused termination of and interference with Plaintiff DELORES MARIE SCOTT's familial relationship with LAMAR LAVALL SCOTT, including by exhibiting deliberate indifference to LAMAR LAVALL SCOTT's safety and security, in violation of the Fourteenth Amendment to the United States Constitution.

51.    Defendants DOE 1 to 30's actions and inactions were motivated by evil motive or intent, involved reckless or callous indifference to constitutional rights, or were wantonly or oppressively done.

52.    Plaintiff DELORES MARIE SCOTT was injured as a direct and proximate result of

19

Defendants DOE 1 to 30's actions and inactions, entitling her to receive compensatory (wrongful death) and nominal damages against Defendants DOE 1 to 30; and punitive damages against Defendants DOE 1 to 30.

WHEREFORE, Plaintiff DELORES MARIE SCOTT prays for relief as hereunder appears.

### THIRD CLAIM

**Unwarranted Interference with Familial Association**

**(U.S. Const. Amend. I; 42 U.S.C. § 1983)**

53.     Plaintiff DELORES MARIE SCOTT asserts this Claim against Defendants DOE 1 to 30.

54.     Plaintiff DELORES MARIE SCOTT realleges and incorporates the allegations of the preceding paragraphs 1 to 41, to the extent relevant and as if fully set forth in this Claim.

55.     Plaintiff DELORES MARIE SCOTT shared a close relationship and special bond with LAMAR LAVALL SCOTT, her biological child, which included deep attachments, commitments, and distinctively personal aspects of their lives and was typical of a close familial relationship. Plaintiff DELORES MARIE SCOTT frequently visited or spoke with LAMAR LAVALL SCOTT.

56.     *Individual Liability*: Defendants DOE 1 to 30 caused termination of and interference with Plaintiff DELORES MARIE SCOTT's familial relationship with LAMAR LAVALL SCOTT, including by exhibiting deliberate indifference to LAMAR LAVALL SCOTT's safety and security, in violation of the First Amendment to the United States Constitution.

57.     Defendants DOE 1 to 30's actions and inactions were motivated by evil motive or intent, involved reckless or callous indifference to constitutional rights, or were wantonly or oppressively done.

58.     Plaintiff DELORES MARIE SCOTT was injured as a direct and proximate result of Defendants DOE 1 to 30's actions and inactions, entitling her to receive compensatory (wrongful death) and nominal damages against Defendants DOE 1 to 30; and punitive damages against Defendants DOE 1 to 30.

WHEREFORE, Plaintiff DELORES MARIE SCOTT prays for relief as hereunder appears.

\ \ \

\ \ \

\ \ \

## FOURTH CLAIM

### Failure to Summon Medical Care

### (Cal. Gov. Code § 845.6)

59.     Plaintiff DELORES MARIE SCOTT (pursuant to California Code of Civil Procedure § 377.30) asserts this Claim against Defendants STATE OF CALIFORNIA, CALIFORNIA DEPARTMENT OF CORRECTIONS & REHABILITATION, and DOE 1 to 30.

60.     Plaintiff DELORES MARIE SCOTT realleges and incorporates the allegations of the preceding paragraphs 1 to 41, to the extent relevant and as if fully set forth in this Claim.

61.     *Individual Liability*: Defendants DOE 1 to 30 knew or had reason to know that LAMAR LAVALL SCOTT was in need of immediate medical care and failed to take reasonable action to summon such medical care, in violation of California Government Code § 845.6.

62.     *Vicarious Liability*: Defendants STATE OF CALIFORNIA and CALIFORNIA DEPARTMENT OF CORRECTIONS & REHABILITATION are vicariously liable, including through the principles of *respondeat superior* and pursuant to California Government Code §§ 815.2(a), 845.6, for injuries proximately caused by the acts and omissions of agents and employees acting within the scope of employment, including Defendants DOE 1 to 30.

63.     Defendants DOE 1 to 30's actions and inactions constituted oppression, fraud, and/or malice resulting in great harm.

64.     LAMAR LAVALL SCOTT was injured as a direct and proximate result of Defendants DOE 1 to 30's actions and inactions, entitling Plaintiff DELORES MARIE SCOTT to receive compensatory (survival) damages against Defendants STATE OF CALIFORNIA, CALIFORNIA DEPARTMENT OF CORRECTIONS & REHABILITATION, and DOE 1 to 30; and punitive damages against Defendants DOE 1 to 30.

WHEREFORE, Plaintiff DELORES MARIE SCOTT prays for relief as hereunder appears.

## FIFTH CLAIM

### Tom Bane Civil Rights Act

### (Cal. Civ. Code § 52.1)

65.     Plaintiff DELORES MARIE SCOTT (pursuant to California Code of Civil Procedure §

21

377.30 and individually) asserts this Claim against Defendants STATE OF CALIFORNIA, CALIFORNIA DEPARTMENT OF CORRECTIONS & REHABILITATION, and DOE 1 to 30.

66.    Plaintiff DELORES MARIE SCOTT realleges and incorporates the allegations of the preceding paragraphs 1 to 64, to the extent relevant and as if fully set forth in this Claim.

Deliberate Indifference

67.    *Individual Liability*: Defendants DOE 1 to 30 exhibited deliberate indifference to LAMAR LAVALL SCOTT's safety and security, including by inadequately classifying, housing, eradicating contraband, supervising, and monitoring LAMAR LAVALL SCOTT and his cellmates, with deliberate indifference or reckless disregard in violation of the Eighth Amendment to the United States Constitution; and Article I § 17 of the California Constitution.

Unwarranted Interference with Familial Association

68.    *Individual Liability*: Defendants DOE 1 to 30 caused termination of and interference with Plaintiff DELORES MARIE SCOTT's familial relationship with LAMAR LAVALL SCOTT, including by exhibiting deliberate indifference to LAMAR LAVALL SCOTT's safety and security, with deliberate indifference or reckless disregard in violation of the First and Fourteenth Amendments to the United States Constitution; and Article I, Section 7(a) of the California Constitution.

Failure to Summon Medical Care

69.    *Individual Liability*: Defendants DOE 1 to 30 knew or had reason to know that LAMAR LAVALL SCOTT was in need of immediate medical care and failed to take reasonable action to summon such medical care, with deliberate indifference or reckless disregard in violation of California Government Code § 845.6.

*    *    *

(Allegations Common to All Theories)

70.    *Vicarious Liability*: STATE OF CALIFORNIA and CALIFORNIA DEPARTMENT OF CORRECTIONS & REHABILITATION are vicariously liable, including through the principles of *respondeat superior* and pursuant to California Government Code §§ 815.2(a), 845.6, for injuries proximately caused by the acts and omissions of agents and employees acting within the scope of employment, including Defendants DOE 1 to 30.

22

71.     Defendants DOE 1 to 30's actions and inactions constituted oppression, fraud, and/or malice resulting in great harm.

72.     LAMAR LAVALL SCOTT and Plaintiff DELORES MARIE SCOTT were injured as a direct and proximate result of Defendants DOE 1 to 30's actions and inactions, entitling Plaintiff DELORES MARIE SCOTT to receive compensatory (survival & wrongful death) and treble damages and civil penalties against Defendants STATE OF CALIFORNIA, CALIFORNIA DEPARTMENT OF CORRECTIONS & REHABILITATION, and DOE 1 to 30; and punitive damages against Defendants DOE 1 to 30.

WHEREFORE, Plaintiff DELORES MARIE SCOTT prays for relief as hereunder appears.

## SIXTH CLAIM

### Intentional Infliction of Emotional Distress

73.     Plaintiff DELORES MARIE SCOTT (pursuant to California Code of Civil Procedure § 377.30) asserts this Claim against Defendants DOE 1 to 30.

74.     Plaintiff DELORES MARIE SCOTT realleges and incorporates the allegations of the preceding paragraphs 1 to 72, to the extent relevant and as if fully set forth in this Claim.

75.     *Individual Liability*: Defendants DOE 1 to 30 engaged in outrageous conduct, with intent or reckless disregard of the probability that LAMAR LAVALL SCOTT would suffer emotional distress and he did suffer severe emotional distress, including by inadequately classifying, housing, eradicating contraband, supervising, and monitoring LAMAR LAVALL SCOTT and his cellmates.

76.     Defendants DOE 1 to 30's actions and inactions constituted oppression, fraud, and/or malice resulting in great harm.

77.     LAMAR LAVALL SCOTT was injured as a direct and proximate result of Defendants DOE 1 to 30's actions and inactions, entitling Plaintiff DELORES MARIE SCOTT to receive compensatory (survival) damages against of Defendants DOE 1 to 30; and punitive damages against of Defendants DOE 1 to 30.

WHEREFORE, Plaintiff DELORES MARIE SCOTT prays for relief as hereunder appears.

\ \ \

\ \ \

1

## SEVENTH CLAIM

2

### Negligence

3        78.     Plaintiff DELORES MARIE SCOTT (pursuant to California Code of Civil Procedure §

4    377.30) asserts this Claim against Defendants STATE OF CALIFORNIA, CALIFORNIA

5    DEPARTMENT OF CORRECTIONS & REHABILITATION, and DOE 1 to 30.

6        79.     Plaintiff DELORES MARIE SCOTT realleges and incorporates the allegations of the

7    preceding paragraphs 1 to 77, to the extent relevant and as if fully set forth in this Claim.

8        80.     *Individual Liability*: Defendants DOE 1 to 30 owed LAMAR LAVALL SCOTT a duty of

9    care and breached that duty, including by inadequately classifying, housing, eradicating contraband,

10   supervising, and monitoring LAMAR LAVALL SCOTT and his cellmates, in violation of the United

11   States and California Constitutions, federal and state laws, regulations, policies, standards, general

12   orders, procedures, training, national and local standards, and/or California Civil Code § 1714(a).

13       81.     *Vicarious Liability*: Defendants STATE OF CALIFORNIA and CALIFORNIA

14   DEPARTMENT OF CORRECTIONS & REHABILITATION are vicariously liable, through the

15   principles of *respondeat superior* and/or pursuant to California Government Code §§ 815.2(a), 845.6, for

16   injuries proximately caused by the acts and omissions of employees acting within the scope of

17   employment, including Defendants DOE 1 to 30.

18       82.     Defendants DOE 1 to 30's actions and inactions constituted oppression, fraud, and/or

19   malice resulting in great harm.

20       83.     LAMAR LAVALL SCOTT was injured as a direct and proximate result of Defendants

21   DOE 1 to 30's actions and inactions, entitling Plaintiff DELORES MARIE SCOTT to receive

22   compensatory (survival) damages against Defendants STATE OF CALIFORNIA, CALIFORNIA

23   DEPARTMENT OF CORRECTIONS & REHABILITATION, and DOE 1 to 30; and punitive damages

24   against Defendants DOE 1 to 30.

25       WHEREFORE, Plaintiff ESTATE OF LAMAR LAVALL SCOTT prays for relief as hereunder

26   appears.

27   \ \ \

28   \ \ \

## EIGHTH CLAIM

### Wrongful Death

### (Cal. Code Civ. Proc. § 377.60)

84.    Plaintiff DELORES MARIE SCOTT asserts this Claim against Defendants STATE OF CALIFORNIA, CALIFORNIA DEPARTMENT OF CORRECTIONS & REHABILITATION, and DOE 1 to 30.

85.    Plaintiff DELORES MARIE SCOTT realleges and incorporates the allegations of the preceding paragraphs 1 to 83, to the extent relevant and as if fully set forth in this Claim.

86.    Plaintiff DELORES MARIE SCOTT shared a natural parent-child relationship with LAMAR LAVALL SCOTT. Plaintiff DELORES MARIE SCOTT held out LAMAR LAVALL SCOTT as their own child. Plaintiff DELORES MARIE SCOTT is the biological parent of LAMAR LAVALL SCOTT. Plaintiff DELORES MARIE SCOTT is an heir and successor-in-interest to LAMAR LAVALL SCOTT. Plaintiff DELORES MARIE SCOTT frequently visited or spoke with LAMAR LAVALL SCOTT, prior to his death.

87.    *Individual Liability*: Defendants DOE 1 to 30 caused LAMAR LAVALL SCOTT's death by wrongful act and neglect, including by inadequately classifying, housing, eradicating contraband, supervising, and monitoring LAMAR LAVALL SCOTT and his cellmates, in violation of the United States and California Constitutions, federal and state laws, regulations, policies, standards, general orders, procedures, training, national and local standards, and/or California Civil Code § 1714(a).

88.    *Vicarious Liability*: Defendants STATE OF CALIFORNIA and CALIFORNIA DEPARTMENT OF CORRECTIONS & REHABILITATION are vicariously liable, through the principles of *respondeat superior* and/or pursuant to California Government Code §§ 815.2(a), 845.6, for injuries proximately caused by the acts and omissions of employees acting within the scope of employment, including Defendants DOE 1 to 30.

89.    Defendants DOE 1 to 30's actions and inactions constituted oppression, fraud, and/or malice resulting in great harm.

90.    LAMAR LAVALL SCOTT died as a direct and proximate result of Defendants STATE OF CALIFORNIA, CALIFORNIA DEPARTMENT OF CORRECTIONS & REHABILITATION, DOE

25

1 to 30's actions and inactions, entitling Plaintiff DELORES MARIE SCOTT to receive compensatory (wrongful death) damages against Defendants STATE OF CALIFORNIA, CALIFORNIA DEPARTMENT OF CORRECTIONS & REHABILITATION, and DOE 1 to 30; and punitive damages against Defendants DOE 1 to 30.

WHEREFORE, Plaintiff DELORES MARIE SCOTT pray for relief as hereunder appears.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff DELORES MARIE SCOTT seeks Judgment as follows:

1. For an award of compensatory, general, special, and nominal damages (including survival damages and wrongful death damages under federal and state law) against Defendants STATE OF CALIFORNIA, CALIFORNIA DEPARTMENT OF CORRECTIONS & REHABILITATION, and DOE 1 to 30, according to proof at trial;

2. For an award of exemplary/punitive damages against Defendants DOE 1 to 30, in an amount sufficient to deter and to make an example of them, because their actions and/or inactions, as alleged, were motivated by evil motive or intent, involved reckless or callous indifference to constitutionally and statutorily protected rights, or were wantonly or oppressively done, and/or constituted oppression and/or malice resulting in great harm;

3. For funeral and/or burial expenses;

4. For an award of actual damages, treble damages, punitive damages, civil penalties, and any other available relief against Defendants STATE OF CALIFORNIA, CALIFORNIA DEPARTMENT OF CORRECTIONS & REHABILITATION, and DOE 1 to 30, pursuant to California Civil Code §§ 52, 52.1, and any other statute as may be applicable (except that no punitive damages are sought against Defendants STATE OF CALIFORNIA and CALIFORNIA DEPARTMENT OF CORRECTIONS & REHABILITATION, pursuant to California Civil Code § 818);

5. For interest;

6. For an award of attorneys' fees and costs, pursuant to 42 U.S.C. § 1988, California Civil Code § 52.1, California Code of Civil Procedure § 1021.5, and any other statute as may be applicable; and

7. For an award of any other further relief, as the Court deems fair, just, and equitable.

Dated: October 27, 2025

Respectfully Submitted,

*/s/ Paul H. Masuhara*

By: _____

Paul H. Masuhara
LAW OFFICE OF MARK E. MERIN
1010 F Street, Suite 300
Sacramento, California 95814
Telephone: (916) 443-6911
Facsimile: (916) 447-8336

Limited Purpose Counsel for Plaintiff
DELORES MARIE SCOTT

27

1

## JURY TRIAL DEMAND

2

A JURY TRIAL IS DEMANDED on behalf of Plaintiff DELORES MARIE SCOTT.

3

Dated: October 27, 2025                              Respectfully Submitted,

4

*/s/ Paul H. Masuhara*

5

By: _____

6

Paul H. Masuhara

7

LAW OFFICE OF MARK E. MERIN
1010 F Street, Suite 300

8

Sacramento, California 95814
Telephone: (916) 443-6911

9

Facsimile: (916) 447-8336

10

Limited Purpose Counsel for Plaintiff
DELORES MARIE SCOTT

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28